OPINION
{¶ 1} This is an appeal from a decision by the Board of Tax Appeals ("Board") upholding a final determination by the Tax Commissioner ("Appellee") assessing sales tax, penalties and interest against SQS Foodstores, Inc., dba Sami Quick Stop ("Appellant"). For the reasons that follow, this Court affirms the judgment of the Board.
 {¶ 2} Appellant is a duly licensed corporation in accordance with the laws of this state, principally organized to operate small convenience stores selling food, liquor, cigarettes and other sundries. In the early 1990's, Appellant filed for protection under Chapter 11 of the Bankruptcy Code. In December of 1991, the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division approved a reorganization plan for the corporation. Apparently, as part of that plan, Appellant sold off properties deemed non-productive.
 {¶ 3} Also under the reorganization plan, Appellant agreed to lease out its four Youngstown area convenience stores. Appellant claims, however, that the terms of the reorganization plan barred it from transferring the stores' liquor permits or vendor licenses as part of the lease agreements. (Appellant's Brf. 3). Consequently, while the various entities leased the convenience stores as independent operators, Appellant maintained ownership of the stores' liquor permits and vendor licenses. In its capacity as owner of the liquor and vendor licenses, Appellant prepared and filed monthly state sales tax returns for the four stores based on the information provided by the stores' operators.
 {¶ 4} During an audit of the four leased stores for the period from January 1, 1993 through December 31, 1995, the Department of Taxation discovered a sales tax collection shortfall of 50%. As a result, the auditors recommended the assessment of additional tax, penalty and interest. According to the Department, the audit was necessary because the stores', "gross sales were low for this type of business. The amount of taxable items purchased proved this to be true. The test check and personal observations also proved the tax was being charged and not remitted." (R. 49, ¶ 3).
 {¶ 5} On April 10, 1997, Appellant submitted a petition for reassessment. (R. 47). On August 27, 1998, Appellee entered its final determination, wherein it conditionally adjusted part of the penalty amount due. (Final Determination, R. pp. 1-3). Appellant appealed the final determination to the Board. On May 26, 2000, the Board entered a Decision and Order affirming Appellee's decision in all respects.
 {¶ 6} Appellant filed a notice of appeal from the Board's decision to this Court on June 26, 2000. The record reflects that the Board did not receive a copy of the notice of appeal until June 29, 2000.
 {¶ 7} On July 10, 2000, Appellee asked this Court to dismiss the appeal for lack of subject matter jurisdiction. In support, Appellee argued that Appellant failed to file a timely notice of appeal with this Court and with the Board as required under R.C. § 5717.04, therefore, this Court had no jurisdiction to address the appeal. In an order entered on March 12, 2001, this Court denied the motion.
 {¶ 8} Appellant raises four assignments of error in this Court. They are set forth at the beginning of Appellant's brief as follows:
 {¶ 9} "1. The Board of Tax Appeals and Tax Commissioner erred when it refused to remit all of the penalty and interest since the assessed Taxpayer was not the proper Vendor.
 {¶ 10} "2. The Board of Tax Appeals and Tax Commissioner erred when it refused to remit all of the Penalty and interest due to the fact that the assessed Taxpayer could not, due to circumstances beyond its control, remove its name from all of the business assets.
 {¶ 11} "3. The Board of Tax Appeals and Tax Commissioner should have found that the Taxpayer was in fact a mere conduit in sending the sales tax to the state and did not have any control over the business which were (sic) the subject of the Audit and eventual assessment.
 {¶ 12} "4. The Board of Tax Appeals and Tax Commissioner's determination was against the manifest weight of the evidence when it held that the markups utilized in the Audit were correct, when in fact the markups relied upon by the Auditor and the tax Commission were higher than the markups actually employed by the Taxpayer." (Appellant's Brf., p. 2).
 {¶ 13} When Appellant sets out to argue these stated assignments, however, it collapses them into three areas of argument. For purposes of clarity, we will treat those arguments as Appellant's assignments of error.
 {¶ 14} Appellant's first and second assignments contend as follows:
 {¶ 15} "I. The Board of Tax Appeals and Tax Commissioner erred when it refused to remit all of the penalty and interest since the assessed Taxpayer was not the proper Vendor. In this case the penalty is unfair, serves only to penalize an innocent taxpayer and should be abated.
 {¶ 16} "II. The Board of Tax Appeals and Tax Commissioner should have found that the Taxpayer was in fact a mere conduit in sending the sales tax to the state and did not have any control over the business which were the subject of the Audit and eventual assessment."
 {¶ 17} These assignments of error are interrelated and it makes sense to address them at the same time. As discussed below, the weight of authority demonstrates that Appellant cannot escape liability for the tax shortfall.
 {¶ 18} Appellant challenges Appellee's assessment of tax, penalties and interest after an audit concluded that there was a 50% shortfall in sales tax collected from four area Sami Quick Stop stores for the period from January 1, 1993 through December 31, 1995. Since Appellant holds the vendor's licenses and the liquor permits for these four stores, the Tax Commission concluded, and the Board agreed that Appellant was responsible for the shortfall.
 {¶ 19} Appellant does not appear to dispute that, as the holder of the vendor's license, he is the vendor for purposes of paying the tax collected by the leased stores. Instead, Appellant argues that the assessment punished the wrong vendor. Appellant argues that once SQS signed over the stores to other individuals it was no longer responsible for the day-to-day operation of the store. Moreover, under the terms of the lease agreement, the lessee assumed responsibility for collecting the tax and accurately reporting the amount collected to Appellant so that he could remit the legitimate amount to the state. Appellant points out that penalizing SQS punishes the wrong entity, and that the leaseholders should have been held responsible for the unpaid sales tax, since they were the ones actually collecting the tax.
 {¶ 20} Alternatively, Appellant complains that because of the terms of the company's plan of reorganization from Bankruptcy Court, he was barred from transferring the vendor licenses and liquor permits, and therefore his failure to pay sufficient tax was due to circumstances wholly beyond his control. Appellant maintains that after the lease arrangements took effect, SQS became merely a conduit through which the sales tax passed from the true vendor to the state.
 {¶ 21} In addressing Appellant's challenges, this Court presumes that the Tax Commissioner's findings are valid. Hatchadorian v. Lindley
(1986), 21 Ohio St.3d 66, 488 N.E.2d 145, at para. 1 of syllabus. An appellate court reviews a Board's decision to assure that it is reasonable and lawful. American Watchmakers-Clockmakers Institute, Inc.v. Tracy (2000), 138 Ohio App.3d 747, 750, 742 N.E.2d 228; citing R.C. § 5717.04. We must uphold the Board's factual findings if they are based on reliable, probative evidence. Id., citing, American Natl. CanCo. v. Tracy (1995), 72 Ohio St.3d 150, 152, 648 N.E.2d 483.
 {¶ 22} Under R.C. § 5739.03, every vendor making retail sales in this state must collect and remit sales tax from the consumer. A "vendor" is defined under R.C. § 5739.01(C) as, "the person providing the service or by whom the transfer effected or license given by a sale is or is to be made or given * * *." R.C. § 5739.13(A) requires the vendor to collect and remit taxes and further specifies that, "[i]f any vendor fails to collect the tax * * * or pay the tax * * * the vendor will be held personally liable for the amount of the tax applicable." See also, R.C. § 5739.33.
 {¶ 23} In Spithogianis v. Limbach (1990), 53 Ohio St.3d 55,559 N.E.2d 449, the Ohio Supreme Court observed the following about taxpayer obligations under these provisions:
 {¶ 24} "The General Assembly intended, through the enactment of R.C. § 5739.33, to hold those officers or employees who were in charge of the operations of a defaulting corporation personally liable for unpaid sales tax if such persons filed the returns or paid taxes, or controlled or supervised others who performed those tasks, or had responsibility for such tasks." Id. at 57.
 {¶ 25} As both the vendor and the entity who submitted the convenience store's tax returns to the state, Appellant was inescapably responsible as contemplated under the broad sweep of R.C. § 5739.33. See, accord, Nimon v. Zaino, 9th Dist. No. 01CA007918, 2002-Ohio-822; and DeLassus v. Tracy (1994), 70 Ohio St.3d 218, 219,638 N.E.2d 528.
 {¶ 26} More importantly, as the Supreme Court stressed in Spithogianis, supra, those charged with responsibility for paying tax cannot escape liability by delegating the duty to others. Id. at 57; see accord,McGlothin, v. Limbach (1991), 57 Ohio St.3d 72, 565 N.E.2d 1276
(corporate officer is responsible for paying uncollected tax even though he did not participate in the day to day affairs of the business). As a consequence, any side agreement that a taxpayer might enter into with another entity concerning responsibility for payment of sales tax, like the lease agreement to which Appellant refers, is not binding on the Tax Commission. Farhan, dba Hiland Foods v. Tracy (July 21, 1998), 10th Dist. No. 97APH10-1410.
 {¶ 27} In Farhan, a taxpayer appealed an assessment similar to the one imposed in the instant case. The Farhan taxpayer initiated the sale of his convenience store. The lease had been assigned and the application to transfer store's liquor permit to the buyer had been prepared and signed, but apparently was never filed. When a subsequent audit revealed a tax shortfall, the Tax Commission assessed tax, penalty and interest against the taxpayer. As in the instant case, the taxpayer in Farhan argued that since he no longer had possession or control over the store, the Commissioner should seek the assessment from store's actual operator and true vendor. Id. at *8.
 {¶ 28} In Farhan, the Board issued a final determination approving the assessment. The reviewing court affirmed. Addressing the taxpayer's claim that the Commission should have penalized the store operator, the court noted that even where two entities have qualified as vendors with respect to food and liquor sales, the Department of Taxation may look to either one or both for the amount of tax assessed. Id., citing, CaptainFrank's, Inc. v. Limbach (1991), 76 Ohio App.3d 438, 442, 602 N.E.2d 357. Given such reasoning, even if this Court could agree with Appellant that the independent convenience store operators are also vendors for purposes of tax collection, it does not change the fact that Appellant is liable for the sales tax shortfall, because SQS is also a vendor.
 {¶ 29} The Board addressed some of the concerns Appellant raises here in Frugh v. Tracy (April 29, 1994), B.T.A. Case No. 91-Z-518. There, the Commission directed the taxpayer to pay tax penalty and interest after an audit found uncollected sales tax. The taxpayer balked, arguing that he had sold his interest in the restaurant in question by the time of the audit and had no involvement in its operation. Nevertheless, the Board upheld the Commissioner's assessment after concluding that the taxpayer could be held personally liable for uncollected sales tax. The Board reached this conclusion despite the fact that the uncollected sales tax accrued after the taxpayer sold the restaurant. Because the taxpayer failed to transfer or cancel his liquor permit and vendor's license, the Board found that, "the statutory duty to make and file sales tax returns and to remit sales taxes remained with Dr. Frugh's corporation until the liquor license was transferred and his business finally terminated." Id. at p. 9, citing, Blakemore v. Limbach
(Oct. 11, 1988), 10th Dist. No. 88-215, and Galvin v. Limbach (April 12, 1993), B.T.A. Case No. 91-J-201.
 {¶ 30} By contrast, in Blakemore, supra, the reviewing court reversed the Board's assessment after concluding that it was contrary to the weight of the evidence. In Blakemore, the taxpayer argued that because he was no longer the legal owner of the restaurant at the time of the audit and he had provided change of ownership information to the Department of Taxation, he was not liable. The record in that case revealed that after the taxpayer transferred his ownership in the restaurant, all the necessary transfer documents were prepared and executed. When the taxpayer continued to receive monthly tax return forms pertaining to the business from the state, he noted on each one that he had sold the business. Id. at *6. Moreover, not only did the taxpayer have no continued involvement in the business, the record reflected that he was no longer even allowed on the premises. The court concluded that given the uncontroverted evidence that the liquor permit and vendor licenses were being used without the taxpayer's knowledge or consent, the Board's decision to assess the taxpayer was erroneous. Id. at *13.
 {¶ 31} In the instant case, there is no dispute that Appellant retained the convenience stores' liquor permits and vendor licenses. Appellant's argument that he may have been forced to do so by the Bankruptcy Court is of little consequence. See, Wilson v. Lindley (Dec. 27, 1983), 10th Dist. No. 88AP-335 (assessment proper where evidence showed that operators were using former owners liquor permit and vendor license with former owner's tacit consent). Clearly, Appellant was aware that the vendor license and permits were being used by the current operators of the convenience stores. Appellant does not contest that it filed and remitted monthly tax returns on the operators' behalf. Accordingly, while Appellant may be able to seek other redress from his store operators for underreporting the sales tax they collected, Appellant cannot avoid its duty as a vendor to pay that tax in the first instance.
 {¶ 32} Given this record, and the broad scope of taxpaying liability imposed under R.C. § 5739.33, this Court cannot say that the Board erred in concluding that Appellant was a vendor as contemplated under R.C. § 5739.01(C). Appellant was properly held responsible for remitting the proper amount of sales tax collected by the convenience stores to the state and this Court overrules Appellant's first and second assignments of error.
 {¶ 33} In its third assignment of error, Appellant maintains that,
 {¶ 34} "III. The Board of Tax Appeals and Tax Commissioner's determination was against the manifest weight of the evidence when it held that the markups utilized in the Audit were correct, when in fact the markups relied upon by the Auditor and the tax (sic) Commission were higher than the markups actually employed by the Taxpayer."
 {¶ 35} In challenging a tax assessment, the taxpayer has the burden of showing in what manner and to what extent the Commissioner is wrong.Federated Dept. Stores v. Lindley (1983), 5 Ohio St.3d 213,450 N.E.2d 687. As noted above, this Court's function is to review the Board's decision to determine if it is reasonable and lawful. Brandy's Inc. v. Zaino, 3rd Dist. No. 5-01-43, 2002-Ohio-1923. In addition, "it does not matter whether [we] might have weighed the evidence differently from the board had this court been making the original determination. As long as there is evidence which reasonably supports the conclusion reached by the board, its decision must stand." Id. at *6; quoting, Highlights for Children, Inc. v. Collins (1977),50 Ohio St.2d 186, 187-188, 364 N.E.2d 13.
 {¶ 36} Initially, the audit calculated the markup on cigarette sales at 24%. Appellee arrived at this percentage based on a test sample of the total dollars purchased and the retail price information that Appellant provided. When Appellant pointed out that this markup was too high because it failed to account for manufacturers' rebates, Appellee reduced the amount to 18%.
 {¶ 37} The Board concluded that Appellant failed to present any evidence to justify a further reduction. Appellant submitted four letters from cigarette manufacturers in support of its argument that the markup should be lower than 18%. One is a letter from Liggett Group, Inc. providing for a shelving allowance of 30 cents per carton. The second and third letters are from The American Tobacco Company and R.J. Reynolds Tobacco Company. Both indicate price reductions, but no "buydowns." The fourth letter is from The New Achievers and offers an opportunity for stores to set up two displays per store, for a total payment of six dollars per store. (R. 39-42).
 {¶ 38} The Board acknowledged the four letters, but concluded that they did not amount to the, "quantifiable proof necessary to demonstrate that a further reduction in the mark-up percentage for cigarettes is warranted." (B.T.A. Case No. 98-J-952, p. 4). The Board apparently reached this conclusion because the letters were offered without any type of context and were unsupported by explanation as to their use in these businesses. Since the Board's conclusion appears to be based on sufficient probative evidence, this Court is not in a position to reverse it.Hawthorn Melody, Inc. v. Lindley (1981), 65 Ohio St.2d 47,417 N.E.2d 1257, syllabus. Thus, we must overrule Appellant's third assignment of error.
 {¶ 39} Having overruled all three of Appellant's assignments of error this Court hereby affirms the decision of the Board upholding Tax Commission's assessment of sales tax, penalties and interest against Appellant.
Donofrio, J., concurs.
Vukovich, P.J., concurs.